UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

EDGAR F. HARMON,

    Plaintiff

v.                                        CIVIL ACTION NO. 2:05-0457

ING and
NATIONAL GUARD ASSOCIATION
OF THE UNITED STATES and
NATIONAL GUARD ASSOCIATION
OF THE UNITED STATES INSURANCE TRUST and
THE NATIONAL GUARD ASSOCIATION OF WEST VIRGINIA and
NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY and
RELIASTAR LIFE INSURANCE COMPANY,

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending are plaintiff's motion to remand and defendants' motion to amend their notice of removal. The motions were filed respectively on July 6 and July 21, 2005.

I.

Plaintiff Edgar F. Harmon is a West Virginia citizen. (Not. of Remov. ¶ 2.a.) Defendant ING does not appear to exist separate and apart from an entity known as ING Group ("ING"), a non-party based in the Netherlands. (Id. ¶ 2.b.) Defendant Reliastar Life Insurance Company ("Reliastar") is a Minnesota Corporation. (Id. ¶ 2.c.) Defendant Northwestern National Life

Insurance Company ("Northwestern") was formerly a Minnesota corporation, having now been subsumed into Reliastar. (Id. ¶ 1.) Defendant National Guard Association of the United States ("NGAUS") is a District of Columbia corporation. (Id. ¶ 2.d.) Defendant National Guard Association of the United States Insurance Trust ("NGAUS Trust") is a Minnesota corporation. (Id. ¶ 2.e.) The National Guard Association of West Virginia (NGAWV) is a West Virginia corporation. (Compl. ¶ 7.) ING, Reliastar, and Northwestern are referred to collectively as the "insurers." NGAUS, NGAUS Trust, and NGAWV are referred to collectively as the "associations."

Plaintiff was employed as a civilian welding technician by the Army National Guard. (Compl. ¶ 1.) He purchased a disability insurance policy ("policy") from one or more of the defendants. (Id. ¶ 3.) On or about January 16, 2002, plaintiff was involuntarily separated from his employment by reason of a medical disability. (Id. ¶ 20.) As a result, he claims entitlement to benefits under the policy. (Id. ¶ 21.) Plaintiff, however, asserts the insurers have wrongfully denied him benefits as part of a larger design to do likewise to many other policyholders in the same manner. (Id. ¶ 26.) He further asserts that the associations have or should have known of the diminished benefits of the insurers' products but continued to use their services for profit. (Id. ¶ 27.)

On October 22, 2004, plaintiff instituted this action in the Circuit Court of Kanawha County. (Id. at 1.) He alleges claims for (1) breach of contract, (2) unfair claims settlement practices, in violation of West Virginia Code section 33-11-4(9), (3) common law bad faith, (4) fraud, (5) negligence, and (6) unjust enrichment. (Id. ¶¶ 29-58.) On June 3, 2005, the case was removed (Not. of Remov. at 1.).

Plaintiff alleges that NGAWV is a West Virginia corporation. (Compl. ¶ 7.) On May 16, 2005, however, NGAWV served its response to plaintiff's combined interrogatories and requests for production of documents stating that "NGAWV is an unincorporated association." (Not. of Remov., ex. D at 5.) The original basis for federal subject matter jurisdiction is summarized in paragraphs 3 and 4 of the notice of removal:

> [NGAWV] has been fraudulently joined as a defendant in this action to defeat diversity jurisdiction. Fraudulent joinder exists when there is no possibility that a cause of action can be established against the non-diverse defendant.
>
> [NGAWV] is an unincorporated association. It is well-settled under West Virginia law that "in the absence of a statute authorizing such procedure, an unincorporated society or association cannot be sued as an entity by its name, nor can judgment be rendered against it merely by name." Therefore, no circumstances exist under which the plaintiff could prevail on his claim against the [NGAWV].

(Not. of Remov. ¶¶ 3-4.)

On July 7, 2005, plaintiff moved to remand, again asserting that NGAWV is a West Virginia corporation. (Mot. to Remand ¶ 3.) Indeed, plaintiff observes that NGAWV previously admitted in its February 7, 2005, answer, filed by the law firm removing the case, that it was a West Virginia entity.[1] (Id. ¶ 3.) Plaintiff contends removal is improper because (1) complete diversity is lacking, and (2) removal is untimely under 28 U.S.C. § 1446(b). (Id. ¶ 6.)

On July 22, 2005, defendants moved to amend their notice of removal, seeking to modify paragraph 4 above as follows:

> [NGAWV] is a West Virginia corporation. However, no valid claim exists against NGAWV because it has no relation to any of the parties or any of the actions in dispute. (Northrup Affidavit ¶¶ 3-6) . . . .

(Am. Not. of Remov. ¶ 4.) The amended notice of removal also states as follows:

> In response to Interrogatory No. 2, the [NGAWV] stated, in relevant part, "there are no contracts or agreements between NGAWV and any other defendants named in this case as NGAWV is not affiliated in any manner with any of the other named defendants." This was the first notice to the remaining defendants that NGAWV was confirming its position about its lack of involvement in the group disability policy at issue and lack of relationship to any of the parties, that the plaintiff could not maintain a claim against the [NGAWV] as an

---

[1] NGAWV was previously represented by the law firm of Jackson Kelly, which answered on its behalf. Shortly thereafter, a conflict of interest arose and NGAWV retained new counsel. The interrogatory answers were prepared by the new law firm.

>    entity under any circumstances and that the joinder of
>    the [NGAWV] was fraudulent. Further, it was the first
>    time the removing defendants could ascertain that the
>    case was removable.

(Id. ¶ 5.)

In response, defendants contend (1) their "good faith belief that NGAWV was an unincorporated association was apparently mistaken[2]", (Resp. at 1-2), (2) plaintiff lacks any claim against NGAWV in view of, inter alia, (a) NGAWV's interrogatory response set out above that it has no relationship, and is not otherwise affiliated with, any of the other named defendants, (b) an affidavit from NGAWV executive director Richard Northrup stating that NGAWV did not underwrite, issue, or participate in the issuance of the policy, (c) NGAWV does not offer any disability insurance products to its members, and (d) NGAWV did not participate in any way in the denial of benefits in this action.

II.

The fraudulent joinder standard is well settled. Our court of appeals lays a "heavy burden" upon a defendant removing

---

[2]The error appears to have occurred because of the unusual manner in which NGAWV is entered in the secretary of state's database. NGAWV also apparently misunderstood the nature of its corporate form.

a case on such grounds:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis added) (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]" <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999).

As the decision in <u>Hartley</u> illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.
>
> <u>In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact</u>. Allowing joinder of the public defendants is proper . . . because courts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the

parties [as] joined . . . unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

. . . . .

We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. Hartley's claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425-26.

Leaving aside for the moment plaintiff's timeliness argument, the court turns to defendants' requested amendment of the notice of removal. Defendants have conceded their error concerning NGAWV's corporate status. Accordingly, removal based upon that factual underpinning is unavailing. In the vacuum created by this failed allegation, defendants propose to amend the notice of removal to assert, essentially, that no claim can be stated against NGAWV under any circumstances. The strategy shift that prompted the amendment would prove to be a futile endeavor in view of the heavy burden imposed upon defendants by Marshall, Mayes, and Hartley.

Defendants have offered but a glimpse of their side of the factual divide in this action. In response, plaintiff states generally that "[t]he Complaint properly states a claim against

NGAWV, but the removing defendants now wish to argue that they are entitled to what is, in essence, summary judgment under Rule 56 . . . before the plaintiff has even received the benefit of initial disclosures under F.R.Civ.P. Rule 26(a)(1) or substantive discovery in the underlying circuit court case." (Pl.'s Reply at 6.)

Plaintiff is correct that further discovery may indeed yield fruits beneficial to plaintiff's theories against NGAWV. Inasmuch as that potential yet exists, the court cannot conclusively determine NGAWV's status or relationship to the co-defendants as a matter of law at this early juncture. Given defendants cannot establish that plaintiff lacks any possibility of success on its claims against NGAWV, the inquiry terminates.

The court, accordingly, ORDERS that plaintiffs' motion to remand be, and it hereby is, granted. The court further ORDERS this action be, and it hereby is, remanded to the Circuit Court of Kanawha County for all further proceedings. The court ORDERS that defendants' motion to amend the notice of removal be, and it hereby is, denied as futile.[3]

---

[3]Plaintiffs seek costs, expenses, and attorney fees incurred in connection with their motion to remand. Title 28 U.S.C. 1447(c) provides in relevant part that, "an order remanding the case may require payment of just costs and actual expenses, including attorney's fees, incurred as a result of the removal."
(continued...)

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

DATED: November 23, 2005

John T. Copenhaver, Jr.
United States District Judge

---

³(...continued)
The decision to award fees upon remand is discretionary. See In re Lowe, 102 F.3d 731, 733 n. 2 (4th Cir. 1996). This action is not one in which "a 'cursory examination would have revealed' a lack of federal jurisdiction." See id. (quoting Husk v. E.I. Du Pont De Nemours & Co., 842 F. Supp. 895, 899 (S.D. W. Va. 1994)). The court finds that defendants' removal was undertaken in good faith, and an award of costs is not warranted in this instance.